```
               IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF KANSAS


RUSSELL SMITH,                    )
                                  )
                 Plaintiff,       )
                                  )
vs.                               )    Case No. 06-1135-MLB
                                  )
MICHAEL J. ASTRUE,¹               )
Commissioner of                   )
Social Security,                  )
                                  )
                 Defendant.       )
_____ )
```

RECOMMENDATION AND REPORT

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be

---

[1]On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Commissioner Jo Anne B. Barnhart as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

1

conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  <u>Graham v. Sullivan</u>, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  <u>Glenn</u>, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can

establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to

step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

Administrative law judge (ALJ) George Bock issued his decision on May 27, 2005 (R. at 17-25). At step one, the ALJ found that plaintiff had not engaged in substantial gainful

employment since his alleged onset date of August 19, 2003 (R. at 17, 18).  At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, status-post 3 surgeries, with residual radiculopathy.  The ALJ also found that plaintiff's irritable bowel syndrome and depression are not severe impairments (R. at 19).  At step three, the ALJ found that plaintiff's impairments do not meet or equal a listed impairment (R. at 20).  After determining plaintiff's residual functional capacity (RFC), the ALJ determined at step four that plaintiff could not perform past relevant work (R. at 22).  At step five, the ALJ found that plaintiff could perform 90% of the sedentary job base, including work as a document preparer, stem mounter, polisher and stuffer (R. at 22-23).  Therefore, the ALJ determined that plaintiff was not disabled prior to May 6, 2004.  The ALJ further determined that, as of May 6, 2004 (when plaintiff turned 50 years old, and is therefore a person closely approaching advanced age), plaintiff was disabled based on utilization of the framework of Medical-Vocational Rule 201.14, 20 C.F.R. Part 404, Subpt. P, App. 2 (R. at 23).

**I. Did the ALJ err in finding that plaintiff's mental impairments and irritable bowel syndrome were not severe impairments?**

The burden of proof at step two is on the plaintiff.  See

Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis).  A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis."  Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); see Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity").  A claimant need only be able to show at this level that the impairment would have more than a minimal effect on his or her ability to do basic work activities.[2]  Williams, 844 F.2d at 751.  However, the claimant must show more than the mere presence of a condition or ailment.  If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity.  Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work.

---

[2]Basic work activities are "abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 404.1521(b)[416.921(b)], including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." Social Security Ruling 85-28, 1985 WL 56856 at *3.  Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir. 2004).

6

Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).

A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled.  20 C.F.R. § 404.1512©, § 416.912©.  The evidence that a claimant has an impairment must come from acceptable medical sources including licensed physicians or psychologists.  20 C.F.R. § 404.1513(a), § 416.913(a).  Evidence from other medical sources, including therapists, nurse-practitioners, and physicians' assistants, may be used to show the severity of an impairment and how it affects the ability to work.  20 C.F.R. § 404.1513(d)(1), § 416.913(d)(1).

SSR 85-28 (Medical impairments that are not severe) states the following:

> Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued.

1985 WL 56856 at *4.  The step two requirement is generally considered a de minimis screening device to dispose of groundless claims; thus, reasonable doubts on severity are to be resolved in favor of the claimant.  Samuel v. Barnhart, 295 F. Supp.2d 926, 952 (E.D. Wis. 2003).

7

The ALJ's step two finding on plaintiff's irritable bowel syndrome was as follows:

> The claimant's irritable bowel syndrome is controlled with medication (Exhibit 5F) and is "not severe." (20 CFR 404.1520©; 404.1529(d)(1); Social Security Ruling 96-3p)

(R. at 19).

In regards to the irritable bowel syndrome, Dr. Miller had stated the following on December 4, 2003:

> Russell Smith suffers from a nonspecific colitis with irritable bowel-type symptoms. He does have an occasional flare-up which does prevent him from working from time to time. In general, he is quite functional. And is able to work in between these flare-ups. He has had a colonoscopy in March of 2003 which revealed the above findings. He [is] being treated with medication.

(R. at 193; Exh. 5F).  The ALJ stated that the irritable bowel syndrome is "controlled" with medication and is therefore not severe.  However, Dr. Miller's report does not state that plaintiff's irritable bowel syndrome is "controlled" with medication; Dr. Miller merely states that plaintiff is being treated with medication.  In fact, Dr. Miller acknowledged that plaintiff has an "occasional flare-up which does prevent him from working from time to time" (R. at 193).  A step two finding of a severe impairment requires a showing by plaintiff that the impairment would have more than a minimal effect on his or her ability to do basic work activities.  An impairment which prevents plaintiff from working from "time to time" certainly has

8

more than a minimal effect on his ability to do basic work activities. Based on the uncontested medical evidence on this point, the court finds that the ALJ erred in his determination that plaintiff's irritable bowel syndrome was not a severe impairment.[3]

The ALJ's step two finding regarding plaintiff's depression was as follows:

> The medical evidence shows a situational depression, diagnosed as adjustment disorder with mixed anxiety and depressed mood (Exhibit 8[F]), which has been rated as being non-severe in nature. The claimant receives no ongoing psychiatric therapy, and he takes no medication for his depression which was caused by marital problems, and he has been okay since getting a divorce. Furthermore, the claimant's situational depression did not meet the durational requirements.

(R. at 19).

The ALJ found that plaintiff's mental impairments were not severe. The ALJ's decision cited to Exhibit 8F, which contained a one page report dated December 4, 2003 by Dr. Stephen Benson, a clinical psychologist (R. at 19, 243). The ALJ did not cite to any other medical or psychological evidence in support of his

---

[3]Because of the ambiguity in Dr. Miller's statement that plaintiff's irritable bowel syndrome prevents plaintiff from working "from time to time," upon remand, the ALJ should consider recontacting Dr. Miller pursuant to 20 C.F.R. § 404.1512(c)(1) in order to obtain a more precise understanding of what it meant by "from time to time" ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains an ambiguity that must be resolved.")

finding on this point.

The record contains a fitness-for-duty evaluation dated August 25, 2003 by Dr. David Bowman, a psychologist (R. at 204-207). The evaluation included psychological testing. Dr. Benson's summary and recommendations are as follows:

> Officer Smith's medical fitness for law enforcement patrol duty is highly questionable due to his back condition and Irritable Bowel Syndrome. His psychological fitness for duty is impaired by: a high level of anxiety, tension, and stress-related physical symptoms, his nervous tendency to avoid interpersonal situations that involve conflict or confrontation, his social withdrawal, hypersensitivity, and suspiciousness of others, and the deteriorated trust and working relationships with fellow officers, and particularly with supervisors. At this point, Officer Smith is clearly <u>not</u> psychologically fit for patrol duty and poses a potential risk to his own and his fellow officers' safety...Given the guarded prognosis for him regaining his psychological fitness for duty, it is further recommended that medical retirement is the most realistic option.
>
> A tentative psychological treatment plan would include: psychiatric medication management, likely including SSRI and anti-anxiety medications, long-term psychological counseling focused on stress management, systematic desensitization, and overcoming negative attitudes and dysfunctional coping styles. Given that Officer Smith is not receptive to psychological interpretations of his life, such work will be difficult. Significant change should not be expected in less than 3-4 months of intensive counseling (and then will not likely result in him being fit for the demands of patrol duty.)
>
> The prognosis for Officer Smith's regaining

>     adequate medical fitness for law enforcement
>     duty appears to be poor.

(R. at 207, emphasis in original). The ALJ never mentioned this report in his decision.

Also contained in the record is a psychological evaluation dated January 18, 2005 by Dr. T. A. Moeller, a psychologist (R. at 273-280). Dr. Moeller also performed psychological testing on the plaintiff as part of his evaluation. Dr. Moeller diagnosed plaintiff with depressive disorder (R. at 277). He stated the following in his report:

> Present for him is a mild to moderate and as yet untreated clinical depression. This is accompanied by a rather obsessive tendency for him, and he may tend to engage in "broken record" thinking with repetitive, and possibly almost ruminative thought processes at times. Also evident is a significant elevation on Scale 0, reflecting a rather reclusive, almost avoidant tendency. This may represent some of the avoidance noted by Dr. Bowman in his earlier report...
>
> Even with this level of depression, he appears capable of sustaining simple, gainful employment within any physical restrictions set for him. Presently, there appears to be some degree of anxiety and/or avoidance for Mr. Smith regarding interactions with others. He would find it more comfortable working in a position which would minimize contact with the public. I believe this is a factor that could correct itself with some supportive and re-educative psychotherapy.
>
> SUMMARY: At this point, I am not able to determine any psychological factors that disable him from gainful employment. He presents as someone who is capable of sustaining any type of job which is within

any physical restrictions given him.
(R. at 276).  Dr. Moeller then filled out a mental RFC assessment, in which he found that plaintiff had a "poor" ability to deal with the public, and a "fair" ability to deal with work stresses.[4]  In all other categories, Dr. Moeller rated plaintiff as having "good" or "unlimited" ability (R. at 278-279).

Nowhere in his decision does the ALJ mention any aspect of Dr. Moeller's assessment or RFC findings.  Admittedly, in his RFC findings, the ALJ did limit plaintiff to no contact with the general public (R. at 21), which is presumably based on Dr. Moeller's RFC assessment.  However, Dr. Moeller also found that plaintiff had a limitation in his ability to deal with work stresses.  Dr. Bowman stated that plaintiff's psychological fitness for police duty was impaired by a number of psychological and stress-related physical symptoms.  However, none of these limitations were discussed or mentioned by the ALJ.

An ALJ must evaluate every medical opinion in the record, although the weight given to each opinion will vary according to the relationship between the disability claimant and the medical professional.  <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1215 (10th Cir. 2004).  Even on issues reserved to the Commissioner, including

---

[4]"Poor" was defined on the assessment as an ability to function in this area being "seriously limited but not precluded," while "fair" was defined as an ability to function in this area being "limited but satisfactory" (R. at 278).

12

the RFC determination and the ultimate issue of disability, opinions from any medical source must be carefully considered and **"must never be ignored"** (emphasis added).  Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3.  It is clear legal error to ignore a medical opinion.  <u>Victory v. Barnhart</u>, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005).  It is reversible error for the ALJ not to discuss uncontroverted evidence he chooses not to rely on, as well as significantly probative evidence he rejects.  <u>Grogan v. Barnhart</u>, 399 F.3d 1257, 1266 (10th Cir. 2005).

The ALJ clearly erred by ignoring the medical opinion of Dr. Bowman.  The ALJ apparently did incorporate Dr. Moeller's opinion that plaintiff had a poor ability to deal with the public, but otherwise never discussed Dr. Moeller's assessment or RFC findings, including Dr. Moeller's opinion that plaintiff had a fair (limited but satisfactory) ability to deal with work stresses.  The failure to discuss the findings and opinions of these two psychologists constitutes clear error.  Their reports provide evidence which could support a finding of severe mental impairments, and limitations on plaintiff's ability to work in addition to limiting plaintiff to no contact with the general public (e.g., Dr. Moeller's finding that plaintiff has a fair ability to deal with work stresses; Dr. Bowman's finding that plaintiff had problems in his relationships with co-workers and particularly with supervisors); however, the court may not weigh

13

the evidence in the first instance. Neil v. Apfel, 1998 WL 568300 at *3 (10th Cir. Sept. 1, 1998). Furthermore, the ALJ should take into account the fact that the findings of the psychologists concerning plaintiff's mental impairment(s) are over one year apart (August 25, 2003 and January 18, 2005). Therefore, the case shall be remanded so that the ALJ can consider the reports by these two psychologists and determine the weight that should be accorded to their findings and opinions at step two and in determining plaintiff's RFC.

**II. Did the ALJ err in his credibility analysis?**

Plaintiff also argues that the ALJ erred in his credibility analysis. The court will not address this issue in depth because the weight accorded to the opinions of Dr. Miller, Dr. Bowman and Dr. Moeller may impact the credibility analysis. See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004). However, the court will note a few issues relating to plaintiff's credibility which should be addressed when the case is remanded.

In his decision, the ALJ stated that plaintiff's "statements concerning his impairments and their impact on his ability to work are credible only pertaining to the time period beginning May 6, 2004" (R. at 23, finding # 3). The ALJ found plaintiff not disabled prior to May 6, 2004, but disabled as of May 6, 2004, the date plaintiff became 50 years of age (R. at 23). The finding of disability was based on Medical-Vocational Rule

201.14.  However, the ALJ fails to explain why plaintiff is credible only as of May 6, 2004, but not before that date.  Upon remand, this should be clarified by the ALJ.

When evaluating plaintiff's credibility and his limitations, the ALJ should also consider the disability field office report dated October 27, 2003 which stated that plaintiff had difficulty sitting throughout the entire interview, that he appeared in pain as the interview progressed, and that he kept moving around in his seat trying to get comfortable (R. at 88).  When evaluating the credibility of the individual's statements, the adjudicator must also consider any observations recorded by SSA personnel who previously interviewed the individual.  SSR 96-7p, 1996 WL 374186 at *8.  The failure of the ALJ to consider the statement of an SSA employee requires remand in order for the ALJ to take the statement into consideration.  Blea v. Barnhart, 466 F.3d 903, 915 (10th Cir. 2006).  This statement and plaintiff's credibility should also be considered in light of: (1) Dr. Murati's report on September 24, 2003 calling for plaintiff to be able to alternate between sitting, standing and walking and being limited to each activity 1/3 of the day (R. at 177), (2) Dr. Moeller's observation that plaintiff can only stand in a stationary position for 10-15 minutes at a time, plaintiff's display of some apparent nonverbal pain behaviors, shifting fairly consistently, and at one point having to rise from a seated position due to

discomfort (R. at 274), and (3) Dr. Davison's statement on April 11, 2005 that plaintiff would "require frequent times during the day to straighten his back to relieve back pain" (R. at 282).[5]

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on March 20, 2007.

> s/John Thomas Reid
> JOHN THOMAS REID
> United States Magistrate Judge

---

[5] Dr. Davison also opined that any job that required rapid movement, frequent bending or rapid foot speed would not be appropriate for him (R. at 282).  On remand, the ALJ should discuss these opinions and determine what weight they should be accorded.